NICOLA T. HANNA
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
ANIL J. ANTONY (Cal. Bar No. 258839)
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes Section
JOSEPH B. WOODRING (Cal. Bar No. 272940)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6579/0284
     Facsimile: (213) 894-2927
     E-mail:    anil.j.antony@usdoj.gov
                joseph.woodring@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

                FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:19-CR-00380-VAP-1 |
|---|---|
|            Plaintiff, | PLEA AGREEMENT FOR DEFENDANT VALENTINE IRO |
|                 v. | |
| VALENTINE IRO,<br>   aka "Iro Enterprises,"<br>   aka "Valentine Obinna Iro,"<br>   aka "Obinna Iro,"<br>   aka "Obinna Nassa," | |
|            Defendant. | |

        1.   This constitutes the plea agreement between defendant

VALENTINE IRO, also known as ("aka") "Iro Enterprises," aka

"Valentine Obinna Iro," aka "Obinna Iro," aka "Obinna Nassa"

("defendant") and the United States Attorney's Office for the Central

District of California ("the USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to Count One of the Indictment in <u>United States v. Valentine Iro</u>, Case No. 2:19-CR-00380-VAP-1, which charges defendant with Conspiracy to Engage in Money Laundering in violation of 18 U.S.C. § 1956(h).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.   Authorize the USAO to obtain a credit report immediately upon defendant's entry of a guilty plea.

i.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

j.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

3.    Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation ("FBI"), and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.    Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4.    For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated

3

January 16, 2020 (the "Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

THE USAO'S OBLIGATIONS

5.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining counts of the Indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

e.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1956(h) (Conspiracy to Engage in Money Laundering); 1349 (Conspiracy to Commit Wire Fraud, Mail Fraud, and Bank Fraud); 1343 (Wire Fraud); § 1344 (Bank Fraud); 1956 (Money Laundering); 1957 (Engaging in Monetary Transactions in Property Derived from Specified

4

Unlawful Activity); 2232(a) (Destruction of Property to Prevent Seizure); 1001(a)(2) (False Statements); and 1028A (Aggravated Identity Theft) arising out of: (i) defendant's conduct described in the agreed-to factual basis set forth in paragraph 15 below; (ii) evidence recovered during search warrants executed on or about August 22, 2019 in connection with this case; or (iii) statements made by defendant during an interview with the FBI on or about August 22, 2019. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

6.   The USAO further agrees:

a.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, or in connection with any sentencing proceeding in any criminal case that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel,

or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

b.   Not to use Cooperation Information against defendant at sentencing for the purpose of determining the applicable guideline range, including the appropriateness of an upward departure, or the sentence to be imposed, and to recommend to the Court that Cooperation Information not be used in determining the applicable guideline range or the sentence to be imposed.  Defendant understands, however, that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court, and that the Court may use Cooperation Information for the purposes set forth in U.S.S.G § 1B1.8(b) and for determining the sentence to be imposed.

c.   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d.   If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

<u>DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION</u>

7.   Defendant understands the following:

6

a.    Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b.    Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c.    Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

d.    At this time, the USAO makes no agreement or representation as to whether any cooperation that defendant has provided or intends to provide constitutes or will constitute substantial assistance.  The decision whether defendant has provided substantial assistance will rest solely within the exclusive judgment of the USAO.

e.    The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

<u>NATURE OF THE OFFENSE</u>

8.    Defendant understands that for defendant to be guilty of the crime charged in Count One, that is, Conspiracy to Engage in Money Laundering, in violation of 18 U.S.C. § 1956(h), the following

7

1   must be true: (1) there was an agreement between two or more persons

2   to conduct a financial transaction involving property that

3   represented the proceeds of wire fraud (in violation of Title 18,

4   United States Code, Section 1343), bank fraud (in violation of Title

5   18, United States Code, Section 1344(2)) or mail fraud (in violation

6   of Title 18, United States Code, Section 1341), where defendant knew

7   that the property represented the proceeds of some form of unlawful

8   activity, and defendant knew that the transaction was designed in

9   whole or in part to conceal or disguise the nature, location, source,

10  ownership, or control of the proceeds; and (2) the defendant became a

11  member of the conspiracy knowing of at least one of its objects and

12  intending to help accomplish it.

13                       <u>PENALTIES AND RESTITUTION</u>

14       9.   Defendant understands that the statutory maximum sentence

15  that the Court can impose for a violation of Title 18, United States

16  Code, Section 1956(h), as charged in the Indictment, is: 20 years

17  imprisonment; a 3-year period of supervised release; a fine of

18  $500,000 or twice the gross gain or gross loss resulting from the

19  offense, whichever is greatest; and a mandatory special assessment of

20  $100.

21       10.  Defendant understands that defendant will be required to

22  pay full restitution to the victim(s) of the offense to which

23  defendant is pleading guilty.  Defendant agrees that, in return for

24  the USAO's compliance with its obligations under this agreement, the

25  Court may order restitution to persons other than the victim(s) of

26  the offenses to which defendant is pleading guilty and in amounts

27  greater than those alleged in the count to which defendant is

28  pleading guilty.  In particular, defendant agrees that the Court may

order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges.  The parties currently believe that the applicable amount of restitution is approximately $1,438,253.05, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.  Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

12.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

13.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm,

the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

14.  Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

1

FACTUAL BASIS

2     15.   Defendant admits that defendant is, in fact, guilty of the

3 offense to which defendant is agreeing to plead guilty.  Defendant

4 and the USAO agree to the statement of facts provided below and agree

5 that this statement of facts is sufficient to support a plea of

6 guilty to the charge described in this agreement and to establish the

7 Sentencing Guidelines factors set forth in paragraph 17 below but is

8 not meant to be a complete recitation of all facts relevant to the

9 underlying criminal conduct or all facts known to either party that

10 relate to that conduct.

11     Beginning no later than on or about October 7, 2014, and through

12 August 22, 2019, defendant knowingly combined, agreed, and conspired

13 with multiple other persons ("coconspirators") to conduct financial

14 transactions into, within, and outside the United States involving

15 property that represented the proceeds of wire fraud, bank fraud, and

16 mail fraud.  The conspiracy targeted numerous victims, including

17 persons and companies, and laundered and/or attempted to launder

18 funds obtained from them.  The victims of the conspiracy included the

19 victims identified in the Indictment as Victim Company 1, M.S.,

20 Victim Company 2, R.B., B.Z., Victim Company 5, Je.F. and Jo.F.,

21 Victim Company 6, Victim Company 7, L.B., Victim Company 9, Victim

22 Law Firm, Victim Company 10, T.P., Victim Company 11, Victim

23 Solicitor Firm, Victim Company 12, Victim Company 13, Victim Company

24 14, Victim Company 15, and Victim Company 16.

25     Defendant admits that he conspired with coconspirators to

26 defraud these victims and launder funds obtained from them in the

27 manner described in the Indictment, and that it was reasonably

28 foreseeable to defendant that the schemes intended to defraud these

11

victims of approximately $25,000,000.  Defendant knew that the
property represented the proceeds of some form of unlawful activity;
that the transactions were designed in whole or in part to conceal or
disguise the nature, location, source, ownership, and control of the
proceeds; and that the transactions with these criminally derived
proceeds, at times, exceeded $10,000.  Defendant became a member of
the conspiracy knowing of its objects and intending to help
accomplish them.  Multiple members of the conspiracy took steps in
furtherance of it, including defendant, as described further below.

Defendant would communicate with individuals committing fraud
("fraudsters"), or middle-men for fraudsters, who sought bank
accounts into which they could fraudulently induce victims to deposit
funds.  Defendant knew that these fraudulent schemes included what
are sometimes referred to as business email compromise ("BEC")
frauds,[1] escrow frauds,[2] romance scams,[3] and other fraud schemes.
Defendant was known to middle-men and fraudsters around the world,
and communicated with coconspirators primarily through messaging
applications and phone calls.  At times, defendant would use code
words and Nigerian pidgin to avoid law enforcement's detection of the
schemes.  The fraudsters perpetrating these schemes, along with the
middle-men, were largely located outside the United States.

---

[1] BEC frauds typically involved a hacker gaining unauthorized access to a business email account, and attempting to trick a victim into making an unauthorized wire transfer.

[2] Escrow fraud is a variation of a BEC scheme, in which a hacker typically gains unauthorized access to the email account of a party to a real estate deal and attempts to trick the victim into making a fraudulent wire transfer.

[3] Romance scams generally take advantage of persons looking for romantic partners by targeting victims on dating websites and other social media platforms.

12

1    Either before or after negotiating with the fraudster or middle-
2    man about the "cut" (i.e., the percentage or amount) of the
3    fraudulent proceeds that defendant would keep for himself for
4    receiving and laundering the funds, defendant would select or find a
5    bank account, or assist in opening a bank account, to be used to
6    receive funds from the victim.  Defendant would collect bank account
7    information (sometimes for bank accounts in the Los Angeles area, and
8    sometimes for bank accounts in other cities or countries), receive
9    requests for bank account information from coconspirators around the
10   world, and then send out bank account information to multiple
11   coconspirators.

12         For romance scams and schemes targeting the elderly, defendant
13   would sometimes use a bank account or money service account that he
14   controlled personally, which he or another coconspirator had opened
15   in the name of another person.  For example, defendant used bank
16   accounts opened in the name of A.O., a Nigerian citizen, for receipt
17   of funds from romance scams and other online fraud schemes, which
18   bank accounts listed defendant's apartment as the address on file.

19         For BECs, escrow fraud, and other business fraud schemes,
20   defendant would attempt to locate an appropriate bank account --
21   often a U.S. business bank account -- into which fraudulent funds
22   could be deposited.  If defendant himself did not have access to a
23   bank account that could be used at the time to receive the
24   fraudulently obtained funds and/or to launder those funds, defendant
25   would ask one or more coconspirators for a bank account that could be
26   used.

27         If a bank account with a specific business name was required,
28   defendant would at times coordinate with other persons to open

accounts that could receive fraudulently obtained funds.  These

coconspirators would, at defendant's direction, attempt to make the

business name look similar to the name of the company with which a

victim company was corresponding about a business transaction, which

made it more likely that the victim company would be tricked into

fraudulently transferring the funds.  This often included the filing

of a fictitious business name statement with the Los Angeles County

Registrar/Recorder's Office, which could be done for a small fee.

This step was necessary because banks would often require official

documentation showing the business existed before opening the

business bank account.

Once such a bank account was open, defendant would provide Los

Angeles-based coconspirators with advice about how to "service" the

bank account -- that is, establishing a regular pattern of activity

so that the receipt, and, in particular, the withdrawal, of

fraudulent funds would not raise suspicions at the bank.

Once a victim deposited funds into a fraudulently opened bank

account or money service account, defendant would coordinate with

other coconspirators to withdraw or move the funds, and then to

further launder the funds.  This sometimes involved sending the funds

to other bank accounts used or controlled by coconspirators through

wires, or withdrawing funds through cashier's checks, personal

checks, or as cash.

Once funds were withdrawn as cash, defendant sometimes worked

with illicit money exchangers who would assist in transferring money

overseas, generally without directly transferring those funds

internationally.  To do this, defendant would coordinate withdrawal

of funds from a fraudulently opened bank account or a legitimate bank

account used to launder funds, and then deposit those funds into the U.S. bank account of an illicit money exchanger.  The illicit money exchanger would then use a Nigerian banking application to transfer other funds in naira, the currency of Nigeria (₦), from his or her own Nigerian bank account to the Nigerian bank account of the coconspirator that defendant specified.  In that way, defendant was able to ensure payment to Nigerian coconspirators without directly transferring funds overseas.  On other occasions, defendant would himself serve as a money exchanger for coconspirators -- receiving fraudulent funds and then directing others, such as family members in Nigeria, to transfer commensurate amounts to a Nigerian bank account of a coconspirator.

Defendant and other coconspirators would also launder funds by purchasing property -- such as cars and trucks -- which they would then ship to Nigeria.  At other times, they would attempt to disguise the fraudulently obtained funds as payments for vehicles.

On both July 19, 2017 and August 22, 2019 -- dates on which FBI agents executed federal search warrants at defendant's apartment in Carson, California -- after the FBI agents knocked and announced their presence, defendant broke and concealed phones that he had used to communicate with coconspirators.  Defendant did this, on both occasions, to willfully conceal evidence of his criminal activity from the FBI and to impede the execution of the search warrants. Defendant also previously lied to the FBI about having broken a phone on July 19, 2017 to willfully conceal such evidence.

Defendant admits that the money laundering described above was sophisticated, and that the above-described conspiracy involved more than 10 victims.

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

17.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. §§ 2S1.1(a)(1), 2B1.1(a)(1)] |
| 10 or more victims | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)(i)] |
| Fraud scheme outside the U.S./sophisticated means | +2 | [U.S.S.G. § 2B1.1(b)(10)(B)] |
| Conviction under 18 U.S.C. § 1956 | +2 | [U.S.S.G. § 2S1.1(b)(2)(B)] |
| Sophisticated laundering | +2 | [U.S.S.G. § 2S1.1(b)(3)] |
| Obstruction of justice | +2 | [U.S.S.G. § 3C1.1] |

The parties further agree that the loss level, as calculated under U.S.S.G. § 2S1.1(a)(1), is approximately +22 (U.S.S.G. § 2B1.1(b)(1)(L)), corresponding to a loss of $25,000,000+.

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

18.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

19.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

20.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel – and if necessary have the Court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

17

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF RETURN OF DIGITAL DATA

21.   Understanding that the government has in its possession digital devices and/or digital media seized from defendant, defendant waives any right to the return of digital data contained on those digital devices and/or digital media and agrees that if any of these digital devices and/or digital media are returned to defendant, the government may delete all digital data from those digital devices and/or digital media before they are returned to defendant.

### WAIVER OF APPEAL OF CONVICTION AND COLLATERAL ATTACK

22.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.   Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

23.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an

explicitly retroactive change in the applicable Sentencing
Guidelines, sentencing statutes, or statutes of conviction.
Defendant understands that this waiver includes, but is not limited
to, arguments that the statute to which defendant is pleading guilty
is unconstitutional, and any and all claims that the statement of
facts provided herein is insufficient to support defendant's plea of
guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

24.   Defendant agrees that, provided the Court imposes a total
term of imprisonment on all counts of conviction of no more than 235
months, defendant gives up the right to appeal all of the following:
(a) the procedures and calculations used to determine and impose any
portion of the sentence; (b) the term of imprisonment imposed by the
Court; (c) the fine imposed by the Court, provided it is within the
statutory maximum; (d) to the extent permitted by law, the
constitutionality or legality of defendant's sentence, provided it is
within the statutory maximum; (e) the amount and terms of any
restitution order; (f) the term of probation or supervised release
imposed by the Court, provided it is within the statutory maximum;
and (g) any of the following conditions of probation or supervised
release imposed by the Court: the conditions set forth in General
Order 20-04 of this Court; the drug testing conditions mandated by 18
U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use
conditions authorized by 18 U.S.C. § 3563(b)(7).

25.   The USAO agrees that, provided all portions of the sentence
are at or below the statutory maximum specified above, the USAO gives
up its right to appeal any portion of the sentence, with the
exception that the USAO reserves the right to appeal the following:

1   the amount of restitution ordered if that amount is less than

2   $1,438,253.05.

3   <u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

4      26.  Defendant agrees that if, after entering a guilty plea

5   pursuant to this agreement, defendant seeks to withdraw and succeeds

6   in withdrawing defendant's guilty plea on any basis other than a

7   claim and finding that entry into this plea agreement was

8   involuntary, then (a) the USAO will be relieved of all of its

9   obligations under this agreement, including in particular its

10   obligations regarding the use of Cooperation Information; (b) in any

11   investigation, criminal prosecution, or civil, administrative, or

12   regulatory action, defendant agrees that any Cooperation Information

13   and any evidence derived from any Cooperation Information shall be

14   admissible against defendant, and defendant will not assert, and

15   hereby waives and gives up, any claim under the United States

16   Constitution, any statute, or any federal rule, that any Cooperation

17   Information or any evidence derived from any Cooperation Information

18   should be suppressed or is inadmissible; and (c) should the USAO

19   choose to pursue any charge that was either dismissed or not filed as

20   a result of this agreement, then (i) any applicable statute of

21   limitations will be tolled between the date of defendant's signing of

22   this agreement and the filing commencing any such action; and

23   (ii) defendant waives and gives up all defenses based on the statute

24   of limitations, any claim of pre-indictment delay, or any speedy

25   trial claim with respect to any such action, except to the extent

26   that such defenses existed as of the date of defendant's signing this

27   agreement.

28

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

27.   Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

28.   This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

29.   Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.   If defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.    The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crime to which defendant has pleaded guilty; (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated to dismiss or not to criminally prosecute pursuant to this agreement; and (iii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.    The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation

Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

30.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

31.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

32.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the

Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 17 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

33.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

34.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//

//

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

35.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____        October 2, 2020
ANIL J. ANTONY                          Date
JOSEPH B. WOODRING
Assistant United States Attorney

_____        10/2/20
VALENTINE IRO                           Date
Defendant

_____        10/2/20
ANTHONY SOLIS / JEROME HAIG             Date
Attorney for Valentine Iro


CERTIFICATION OF DEFENDANT

I understand, read, and comprehend English, and I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of

25

relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          10/02/20
VALENTINE IRO                              Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am VALENTINE IRO's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set

//

//

26

forth in this agreement is sufficient to support my client's entry of

a guilty plea pursuant to this agreement.

ANTHONY SOLIS / JEROME HAIG
Attorney for Valentine Iro

10-2-20
Date

27